Filed 1/19/22  In re S.M. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | B310976 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIO M.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20LJJP00596A) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael C. Kelley, Judge.  Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Father Mario M., who is serving a life sentence for murder, appeals the dispositional order removing his then 15-year-old daughter, S.M. from his custody after she had been removed from the custody of her legal guardian. The sole contention he asserts on appeal is that the Los Angeles County Department of Children and Family Services (Department) failed to investigate and assess relatives for placement of S.M., including S.M.'s adult brother, and two other relatives identified by father for placement. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This family came to the attention of the Department in July 2020, following a referral that paternal grandmother, who is S.M.'s legal guardian, slapped and verbally abused S.M., and that S.M. has a history of mental health issues and self-harm, and a psychiatric hospitalization for attempting suicide. S.M. had been diagnosed with major depressive disorder.

During the Department's investigation, paternal grandmother decided that she could no longer care for S.M., and told the Department there were no other family members willing to care for her. Paternal grandmother wanted S.M. removed from her home, even if that meant she would be placed in foster care. According to paternal grandmother, mother and father resided in Nevada. Father was serving a life sentence in prison for second degree murder. The Department was attempting to locate mother and father.

S.M. was placed in foster care on September 17, 2020. According to her foster mother, S.M. had to be "constantly . . . monitor[ed]" for her remote learning. She also suffered from enuresis and encopresis, and low self-esteem. S.M. would tell lies for attention, and would take things that did not belong to her. S.M.'s therapist warned the caregiver to monitor her access to

2

electronics, because she would watch pornography. The caregiver also had to ensure S.M. would take her psychotropic medications, because without close supervision, she would hide the pills and not take them.

S.M. was detained from mother, father, and paternal grandmother on September 24, 2020. Neither mother nor father were present at the detention hearing, and the juvenile court ordered the Department to conduct a due diligence to locate them. The court also vested the Department with discretion to place S.M. with any appropriate relative or nonrelative extended family member. On September 30, 2020, at the request of S.M.'s counsel, the court ordered the Department to assess S.M.'s older brother, X.M. for visitation. The Department left him a voicemail on October 19, 2020, but X.M. did not respond to the message.

At an October 22, 2020 receipt of report hearing, the juvenile court asked whether any family members had been identified by paternal grandmother for placement. Counsel responded that paternal grandmother did not have that information but could provide information to the Department at a later date. The court observed that "the Department understands its obligation to evaluate any family members for placement." That same day, father filed a relative information sheet identifying paternal cousin, M.W., and providing her address, e-mail address, and phone number. No other relatives were identified on the form.

According to the November 2020 jurisdiction/disposition report, S.M. again told the Department she was interested in being placed with her adult brother, X.M. According to S.M., he worked at Ross Warehouse from midnight to noon. She said he used to take her to the park when paternal grandmother yelled at her, but he never reported grandmother's behavior to the police.

3

The Department was still unable to reach X.M. so that he could be assessed.

According to a last minute information, the Department spoke with father on November 5, 2020. Father asked how S.M. was doing, and the social worker informed him about her "current status in the foster home." The Department's report does not state whether relative placement was discussed with father.

On December 11, 2020, father requested a contested dispositional hearing, arguing that "there is an issue with the Department's original placement of the minor as well as the requirements that the Department reach out to relatives . . . , it does not appear that the Department has done so." The court stated father could address any issues with relative placement at the scheduled combined jurisdiction/disposition hearing on January 6, 2021. The court again ordered the Department to assess S.M.'s brother for placement.

The Department's December 31, 2020 last minute information reported the Department made contact with X.M., and that he was willing to be considered as a "possible" placement for S.M. A CLETS search revealed "no hits," but CACI results were pending. Also, the Department was waiting for information about X.M.'s father, who resided with X.M., so that a background check could be completed. Mother told the Department that she wanted S.M. placed with X.M. The Department was concerned about changing S.M.'s placement, as S.M. had finally stabilized in her current placement and had extensive needs related to her education, supervision, and medication. Mother wanted whatever was best for S.M., even if that meant remaining in her current foster care placement.

At the January 29, 2021 combined jurisdiction/disposition hearing (the hearing had been continued a number of times), the court sustained the petition, and terminated paternal grandmother's legal guardianship over S.M. Father testified that M.W. was his niece and that, though he had never asked her if she would be willing to care for S.M., paternal aunt told him that M.W. was willing to care for her. It had been years since father had been in touch with M.W. The only other relative father proposed be considered for placement of S.M. was his adult daughter, M.M. He admitted the Department had sent him letters and been in contact with him, but denied that the Department ever asked him about family members available to care for S.M.

The dispositional hearing was continued to February 9, 2021. Father's counsel argued the Department had failed to assess father's family members for placement. The Department argued that because M.W. resided in Nevada, an ICPC was necessary to evaluate her for placement, which could occur after disposition. The court removed S.M. from father, and bypassed reunification services. This timely appeal followed.

## DISCUSSION

Father complains the Department and juvenile court failed to fulfill statutory obligations to investigate potential relative placements, and to assess those relatives about whom they had information, including S.M.'s brother, S.M.'s sister, and paternal cousin M.W. We sent the parties a letter pursuant to Government Code section 68081 asking whether the appeal was moot as to the claims regarding paternal cousin M.W., on the basis that after this appeal was filed, the court ordered an ICPC to be conducted for M.W. The Department argues the appeal is moot as to this claim, and father has not responded to our letter.

5

The Department has asked us to take judicial notice of a Department report indicating that M.W. is not interested in placement of S.M. Therefore, we will not reach the merits of father's claim as to M.W. Regarding father's remaining claims, we find no error.

When a child is removed from parental custody, social workers and the juvenile court must investigate and consider the child's relatives for potential placement. (See, e.g., Welf. & Inst. Code, § 361.3, subd. (a) [requiring that "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative"].) "The court shall order the parent to disclose to the county social worker the names, residences, and any other known identifying information of any maternal or parental relatives." (*Id.,* subd. (a)(8)(B).)

Within 30 days of the child's removal from parental custody, the social worker "shall use due diligence" "to identify and locate all grandparents, . . . adult siblings, [and] other adult relatives of the child, . . . including any other adult relatives suggested by the parents." (Welf. & Inst. Code, § 309, subd. (e)(1) & (3); Cal. Rules of Court, rules 5.695(f), 5.637.) Due diligence includes asking the child about relatives, asking known relatives about other relatives, searching the case file for information about relatives, and conducing online research, among other methods. (Cal. Rules of Court, rule 5.695(f).)

The social worker shall provide the identified adult relatives with written notice, and oral notice when appropriate, of the child's removal and "[a]n explanation of the various options to participate in the care and placement of the child and support for the child's family, including any options that may be lost by failing to respond." (Welf. & Inst. Code, § 309, subd. (e)(1)(B); Cal. Rules of Court, rule 5.534(b)(3).) The Department's reports

should address the appropriateness of any relative placement. (§ 358.1, subd. (h); rule 5.690(a)(1)(C).) Social workers are required to document their efforts in social studies regarding contacting "relatives given preferential consideration for placement" to ascertain their interest in placement. (§ 361.3, subd. (a)(8)(B).)

At the initial petition hearing, "[i]f the child cannot be returned to the physical custody of their parent or guardian, the court shall determine if there is a relative who is able and willing to care for the child, and has been assessed pursuant to Section 361.4." (Welf. & Inst. Code, § 319, subd. (f)(3).) Under section 361.4, prior to placing a child with a relative, a social worker must investigate the relative's criminal history and any prior allegations of child abuse, and assess their home. (§ 361.4, subd. (a).)

Father argues the Department's reports do not state that mother or father were asked about relatives for placement, and do not report that any relatives received notice. That is not a fair or accurate history of events. The record shows that father filed a relative information sheet identifying only one relative, M.W. Although he testified at the dispositional hearing about his daughter being a possible placement, he had not identified her on the relative information sheet, and he never provided any contact information for her. Paternal grandmother, S.M.'s legal guardian, reported that there were no relatives available for placement of S.M. And the Department did discuss relative placement with mother; the Department's reports reflect that mother told the Department she wanted X.M. evaluated for placement. The Department also discussed relative placement with S.M., and she too identified only her brother X.M.

7

Father also argues the Department had not completed its assessment of X.M. for placement, that X.M. was entitled to preferential consideration for placement, and that the juvenile court never made a ruling on whether placement with X.M. was appropriate. That is also a misleading summary of events. The juvenile court ordered the Department to assess X.M., and the assessment was clearly underway, as discussed in the Department's reports.

In any event, we are not inclined to find any prejudice by the Department having not placed S.M. with X.M. The record includes ample information indicating such a placement would not be appropriate or in S.M.'s best interests, given her significant mental health issues, the level of oversight she required, X.M.'s work schedule, and his failure to report abuse by paternal grandmother. "[T]he court is not to presume that a child should be placed with a relative, but is to determine whether such a placement is appropriate, taking into account the suitability of the relative's home and the best interest of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 321, italics omitted.)

## DISPOSITION

The dispositional order is affirmed.


GRIMES, Acting P. J.

WE CONCUR:


WILEY, J.        HARUTUNIAN, J.*

---

*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8